**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

SUSAN SELTZER, (Pro Se)

Petitioner.

v

**Case: 1:21-cv-02093-JMC**

GARY GENSLER, Chairman, Securities and Exchange Commission

Respondent.

RECEIVED
Mail Room
JAN 18 2022
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

### PETTIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY DISCOVERY

Petitioner Seltzer respectfully requests the Court deny the Motion to Stay Discovery. Petitioner understands, discovery "equalizes information asymmetries" which are prevalent before the Court in this Mandamus action.

The Writ of Mandamus is before the Court due to Respondent's violations of APA, that resulted in violations of Petitioner's constitutional rights to due process, "the right to be heard". This constitutional violation is the primary reason the Writ of Mandamus is before the court, which has subject matter jurisdiction. This constitutional violation and two Americans with Disability Act (ADA) violations resulted directly in the most odious defamation and false statements published excessively, attached to Petitioner's name in a Google Search, through SRO FINRA's entitlement system, without following the most basic tenets of the SEC's oversight of FINRA, (1) "An Award Document Must Only Contain Facts" and (2) A FINRA Award that does not dispose of the claims presented to the Panel is *not* deemed an Award.

The mandate that the Court receive the facts since the Petitioner did not have the "opportunity to be heard" could not be more critical in the Court's decision to deny the request

for the Motion to Dismiss and stay of discovery. Consideration of a Motion to Stay Discovery should be denied when further harm will ensue against Petitioner. The longer the defamation is widely distributed and public, the greater the injury to Petitioner.

In Petitioner's response to Motion to Stay Discovery, Petitioner respectfully requests the Respondent, Gary Gensler, Chair, SEC, correct the record filed with the Court on Page 23 of 23 as excerpted below, from Chair Gensler's response to the Court; it is not factual:

Case 1:21-cv-02093-JMC Document 17-1 Filed 12/17/21 Page 23 of 23

**"CERTIFICATE OF CONFERENCE**

I certify that on December 17, 2021, I as counsel for Respondent sent an email to *pro se* Petitioner Seltzer to confer concerning the Respondent's filing of its motion to stay discovery. Petitioner *did not respond before* the filing of this motion.

/s/ *Juanita C. Hernández*

Juanita C. Hernández"

Petitioner certifies that she received an email from Ms. Hernandez on December 17, 2021, Subj: "Confer on Motion to Stay". Petitioner *did* respond on December 17, 2021, to Ms. Hernandez's email at 1:56 PM, MST, stating she (Petitioner) would not agree to a Motion to Stay Discovery. There was no further response from Ms. Hernandez to Petitioner's response to the request to "Confer on Motion to Stay." Petitioner Seltzer received the Motion to Dismiss, December 17, 2021, through ECF at 2:19 PM MST on December 17, 2021. Petitioner respectfully requests that Respondent, Chair Gensler, correct the record. Petitioner did respond to the SEC's (Hernandez) email, "Confer on Motion to Stay", *before* the SEC filed the Motion, with no further response from the SEC to Petitioner's email response.

Pursuant to constitutional and statutory requirements, courts may hear challenges to the actions of federal agencies in certain situations. The SEC has delayed action on APA oversight of FINRA R. 12212. The Administrative Procedures Act ("APA") provides a basis for suit where the government has unreasonably delayed action or fails to act. 5 U.S.C. §§ 555(b) and 706(1). The SEC has failed to act within a reasonable period.

The APA directs reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed" and to "hold unlawful and set aside agency action, findings, and conclusions" that violate the law or are otherwise "arbitrary and capricious", as defined Page 9 of Writ, re: disparate treatment of Petitioner as compared to counsel, Terry Weiss, as one example. Petitioner was unable to file a Petition to Vacate due to such disparate treatment created by actions by both FINRA and the SEC.[1]

As Petitioner's Memorandum Supporting Opposition to the Motion to Dismiss the Writ of Mandamus highlights, the SEC has unreasonably delayed its duties to review Rules that the SEC approved; particularly when investors provide evidence to the SEC that the SEC's failure to oversee past rulemaking is violating the Exchange Act of 1934 as an SEC approved SRO is engaging in harm to an investor through (1) blocking the investor's constitutional right to be

---

[1] As one email to Petitioner stated, "Securities lawyers will never represent you based on the defamatory claims by FINRA in the Awards Online, particularly the fact that you were "under the supervision of security". (Categorically false and defamatory) Further, Colorado PIABA lawyers stated, "You will never find a Colorado lawyer to represent you; as the result of the *Postell* (https://www.finra.org/sites/default/files/aao_documents/09-07121-Award-FINRA-20110519.pdf case, FINRA's removal of Ilene Gormly, her threats to the SEC, and public PR campaign, through William Cohan, and Google Tags to her name, Gormly, and lawsuit (Petition to Vacate) by securities lawyer, Terry Weiss, "Petitioner was told, "not one securities lawyer would ever go adverse to Gormly. It would be the end of their career." https://piaba.org/in-the-media/wall-streets-kangaroo-court-gets-black-eye-william-d-cohan

heard, resulting in excessive publication of odious defamation and (2) failing to adhere to existing Federal law, American Disabilities Act (ADA) on two occasions that blocked an investor's right to accommodations in a quasi-judicial proceeding. Further, "the D.C. Circuit has viewed these provisions, together with the requirement under the Administrative Procedure Act that Commission rulemaking be conducted "in accordance with law," as imposing on the Commission a "statutory obligation to determine as best it can the economic implications of the rule." Similarly, the court has found certain Commission rules arbitrary and capricious based on its conclusion that the Commission failed adequately to evaluate a rule's economic impact."[2]

FINRA R. 12212 is arbitrary and capricious resulting in disparate treatment of a Pro Se investor. In general, the arbitrary-and-capricious standard requires an agency to demonstrate that it engaged in reasoned decision-making when reaching its determination.[3] The SEC is failing to consider circumstances that warrant different treatment for different parties. Further, the administrative record on R. 12212 Rulemaking is lacking. Courts require essential facts upon which the administrative decision was based. The SEC had no response to the SIA's[4] concerns

---

[2] E.g., Business Roundtable, 647 F.3d at 1148 (finding that the Commission had failed "adequately to assess the economic effects of a new rule"). The economic effects of an SRO interfering to protect a Member Firm from penalties and findings of securities law violations and engaging in anti-competitive behavior has a direct economic effect on capital markets overall.

[3] *State Farm*, 463 U.S. at 52 ("In this case, the agency's explanation for rescission of the passive restraint requirement is not sufficient to enable us to conclude that the rescission was the product of reasoned decision-making.") (Emphasis in original); *Petroleum Commc'ns, Inc. v. FCC,* 22 F.3d 1164, 1172 (D.C. Cir. 1994)

[4] "The deficiencies in Proposed Rule 12212 should be remedied by: Requiring notice and an opportunity to be heard; establishing substantive standards for the imposition of sanctions; and limiting sanctions to violations of orders (as opposed to any provision of the Proposed Customer Code)." Notice and Opportunity to Be Heard. Proposed Rule 12212 should require notice to the party against whom sanctions are sought. See July 13, 2005, letter to Jonathan G. Katz, Secretary, SEC from Chair, Litigation, SIA, re: **File No. SR-NASD-2003-158 Proposed NASD Code of Arbitration Procedure for Customer Disputes**

with constitutional overreach of R. 12212, other than accepting FINRA would "train arbitrators" on the change, which never happened as to the scope and definition of SIA's concerns of constitutional overreach. The SEC took no position to R. 12212 and if it was "constitutional overreach" in its rulemaking. The SEC presented no "reasoned decision-making" to change FINRA Rules to provide Arbitrators the authority to dismiss claims on a Party's "behavior" without permitting the Party an opportunity to first "be heard". Further, Counsel, for a Member Firm, would not be subject to the same standard as a Pro Se Claimant. A Member firm's counsel could never be sanctioned or removed from the Hearing.

The Panel found merit, after her "Case in Chief" to Petitioner's Claims in Arb 17-01857. Instead, FINRA intervened, digital recording #274, shortly thereafter. Panel Chair, "I have spoken with FINRA about your "behavior," and *they* (FINRA) have told me I can ask you to leave." Petitioner to Panel Chair (recording #274), "For how long?" Panel Chair, "I will speak to FINRA." That was the end of the Hearing, and all claims were dismissed with prejudice without permitting Petitioner the right to even know of the false claims that FINRA staff and Panel Chair would publish at FINRA AWO, which cannot constitute "inappropriate behavior" and violated no Customer Code. For example, Petitioner had a every right to present facts that Respondent's counsel made false statements concerning a hearing disability. That is not inappropriate behavior. One cannot dismiss claims based on facts and fair and just statements that had nothing to do with "behavior." Petitioner was not permitted the most basic right to even know of the claims that would be written into a public Award, nor permitted to respond to the false claims, despite the fact the Panel had determined the claims indeed had merit after hearing

the evidentiary testimony. FINRA *staff* intervened and made the determination to dismiss all claims with prejudice based on "hearsay", false and defamatory statements and blocked an investor's right to represent the facts to FINRA. FINRA dismissed the claims (with merit) with prejudice to protect its Member Firm, USBI and then engaged in excessive publication of defamation to harm Petitioner who FINRA and Member firms deemed a "competitor."

FAA mandates an arbitration must be in form and procedure as a court of law. Because FINRA staff directly intervened and stated Panel Chair should remove Petitioner, the arbitration was "not in form and procedure" as FAA mandates. Thus, intervention by FINRA staff and excessive publication of the defamation mandates all privilege to such statements are foregone, as the Memorandum of Points an Authorities in Opposition to the Motion to Dismiss define.

In sum, FINRA permitted Sanctions without Petitioner's constitutional right to be heard, which the public record of the rulemaking of 12212(c) warned the SEC to provide further oversight so constitutional rights were not violated. SEC breached their duty under the Administrative Procedure Act, exactly as the GAO has warned the SEC three times to make changes, over the past decade.[5] The record and Hearing outcome was decided by the SRO, a

---

[5] (1)GAO issued its first report in **May 2012 (GAO-12-625)**. This report (1) assesses SEC's implementation of a risk-based framework for overseeing FINRA; (2) reviews SEC oversight activities of FINRA operations; and (3) assesses recent inspections of areas listed in Section 964. **April 2015** SECURITIES REGULATION "**SEC Can Further Enhance Its Oversight** Program of FINRA" **GAO-15-37** Specifically, SEC has yet to

- develop specific performance goals and measures, with corresponding targets to monitor its progress toward the goal of enhancing FINRA oversight;
- formalize procedures for documenting its oversight determinations, such as selecting FINRA areas for inspections and any changes made to planned oversight activities; and

**Dec 15, 2021 Securities Regulation: SEC Could Take Further Actions to Help Achieve Its FINRA Oversight Goals GAO-22-105367** GAO found, "Reviewing FINRA's regulatory work is critical to SEC's mission of protecting investors and

non-neutral party, who engaged in a fraudulent scheme to protect its Member Firm and permitted misuse of a Rule, that had never been employed before in such a manner, against any investor or (to our knowledge any broker) was never intended to be used to prevent an Arbitration to be dismissed without resolution of the claims, embedded in the brokerage contract. If the SEC refuses to enforce the Exchange Act for investor protection, blocking of constitutional "right to be heard" and intentional violations of the Exchange Act by an SRO, the Courts can order an Agency to act when it not only harms an investor but violates Section 20(e) of the Exchange Act.

Immediate discovery is critical to protect Petitioner from further harm (defamation) and if the harm to Petitioner was a direct result of an SRO's violation of Section 20(e) of the Exchange Act[6].

The Stay will result in irreparable harm to Petitioner that cannot be recovered through monetary damages. Damage to reputation of Petitioner is ongoing through the Awards Online false and defamatory posting, exacerbated by FINRA's intentional excessive publication, that violates the most basic tenets of prerequisites that SEC has confirmed must be part of the Award. The statements must be fact based. The Award is not fact based, is false and defamatory; causing ongoing injury to Petitioner. Such injury results directly from SEC's providing excess authority to FINRA to violate Petitioner's constitutional "right to be heard" in FINRA's quasi-judicial proceeding that resulted in harm(defamation) to an investor, a direct violation of SEC's

---

maintaining fair, efficient markets. For example, SEC reviews FINRA's examinations of securities firms and may identify deficiencies. But we found that SEC doesn't have documented procedures for determining which deficiencies—and FINRA responses—to track.

[6] Section 20(e) of the Exchange Act of 1934, "those parties who are found to have aided and abetted any such violation are themselves considered to have committed the underlying offense

oversight of Exchange Act of 1934. The SEC has a *nondiscretionary* duty, to provide oversight of all SRO's and if the SRO fails to adhere to its charter and application to the SEC, the SEC must act to enforce the Exchange Act and protect investors.

1. Moreover, Petitioner would be prejudiced by a stay, particularly because discovery is appropriate given the nature of this administrative matter. The SEC's administrative duty under the Exchange Act in the claims before the Court, is nondiscretionary. In the case of *Friends of the Earth,* cited by Chair Gensler, the Discovery was stayed in part because the EPA's duty was deemed discretionary. *See, e.g., Friends of the Earth v. U.S. EPA*, 934 F. Supp. 2d 40 (D.D.C. 2013); Local Civil Rule 16(b)(1) (exempting from discovery matters to be decided on the administrative record); *see generally White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) (The "decision whether to stay discovery is committed to the sound discretion of the district court judge.").

2. The excerpts of portions of the Administrative Record, the repeated recommendations by the GAO, demand the Court receive the details of the Rulemaking (12212) record and how and why such injury to Petitioner occurred in direct violation of the Exchange Act. Accordingly, the Court should exercise its discretion to deny the Commission's motion to stay discovery. A government plaintiff should not be treated differently than any other plaintiff for the purposes of deciding a motion to stay, whether the government supports or opposes the stay.

3. The doctrine of ultra vires, the basic doctrine of administrative law states that an authority, the SEC in this instance, can exercise only so much power as is conferred on it by law. If the recipient, in this case the Petitioner, of the statutory power exercised

by SEC, such excess power, the court may declare the act to be void and of no legal effect.

4. The SEC is permitting arbitrary and capricious actions, disparate treatment and civil rights violations and Federal statute violations that demand immediate protection of an investor harmed by a Federal Agency's lack of oversight of an SRO, a nondiscretionary duty under the Exchange Act of 1934, who has repeatedly willfully violated warnings from the GAO to provide oversight of rules that have been passed and the resultant impact on investors. (See footnote five, Page 5.) The GAO has stated, since 2012, and more recently in their December 2021 report on SEC's oversight of FINRA that "SEC regularly reviewed FINRA proposed rule changes that are subject to SEC approval to determine consistency with the Securities Exchange Act of 1934 and related rules and regulations. *However*, neither SEC nor FINRA conducts retrospective reviews of FINRA's rules." That statement, SEC does not conduct "retrospective review of FINRA' rules" is direct causation of Petitioner's injury.

5. The SEC's lack of oversight of the violation of constitutional boundaries, as described (warning ) by SIFMA to the SEC during the comment period, in the Opposition to Motion to Dismiss the Writ, demonstrates the SEC's lack of oversight of approval of subordinate "legislation without the proper legal authority may be invalid as beyond the powers of authority that issued it."

6. The Respondent, Chair Gensler, and SEC have failed to provide just cause why the stay should be imposed.

7. Chair Gensler, SEC, the agency, it appears has excluded from its response to the Court the relevant documents needed to consider the Motion to Dismiss. "If the challenger

establishes a prima facie case that the record is incomplete, it may be allowed to engage in discovery proceedings to determine what additional materials should be included." Chair Gensler's Motion to Dismiss Writ does not include any support from the Federal Register for rulemaking of R. 12212 to justify such a Motion to Stay recovery.

8. The SEC has already delayed responding to Petitioner rights to protection and SEC's proper enforcement of its SRO, FINRA's Exchange Act application and charter, and has refused to respond to Petitioner from March 2019 to present; which has brought the issue before the Court due to ongoing harm by SEC's violation of the Administrative Procedure Act and excess power, through blocking Petitioner's constitutional "right to be heard" in a FINRA Arbitration that is resulting in ongoing harm through repeated publication of defamation, harassment and anti-competitive behavior in direct violation of the SEC Rules documenting the investor purpose of publication of FINRA Awards Online.

9. Good cause simply does not exist for the delay, therefore the request for a stay should be denied. The likelihood of further harm to Petitioner, due to delay, against harm due to unnecessary discovery costs to the SEC cannot be measured. It is an individual's life and reputation compared to a Government Agency that sees no urgency in ensuring the Exchange Act of 1934 is properly enforced to protect investors. Further, while the injury is personal, a stay is also not in the public interest. If an investor believes the SEC will permit FINRA to publish false and defamatory statements about any investor to relieve a broker dealer of all liability for securities law breaches, a violation of Section 20(e) of the Exchange Act, the confidence in the U.S. capital markets will be shattered. A quasi-judicial system that fabricates defamation, publishes such

defamation repeatedly through FINRA Awards Online SEO maximization of Googlebots[7] and tags to that investor's name will have a chilling effect on the entire capital markets system. It is a clear and distinct violation of intentional harm against an investor of the SRO's charter approved by the SEC. Such egregious conduct demands the court take action to enforce the SEC's nondiscretionary Exchange Act duty as defined in the Writ.

10. The SEC has provided the Court no detail that the discovery will be an "extraordinary" burden and costly.

11. The SEC has ignored the GAO's warning since 2012 about their failures in oversight of procedures in rulemaking. FINRA Rule 12212 (c) breach of one's constitutional rights is an example of what the GAO is warning the SEC to do and has not done over the past decade; resulting directly in the injury to Petitioner. Discovery and the details in the Federal Register and comments concerning FINRA Rule 12212 (c) are necessary. Petitioner understands, that first, courts will examine the statutory authority for the SEC's action and has the power to invalidate agency choices that exceed these limits. In addition, a court may examine an agency's discretionary decisions, or discrete actions with legal consequences for the public. Finally, courts may also review an agency's compliance with statutory procedural requirements.

Such review of why the ongoing harm and injury to Petitioner, resulting from the constitutional breach of due process and right to be heard, is not a priority for the SEC; therefore, only the Courts can demand SEC, under APA, order immediate action, discovery, and protection

---

[7] https://raddinteractive.com/2828-2/

for investors, when constitutional rights are being violated and Exchange Act is being violated. The Exchange Act of 1934 specifies this is a nondiscretionary action for the SEC. Petitioner would be prejudiced by the stay through ongoing irreparable injury to reputation through ongoing excessive defamation publication by an SRO, through their entitlement system and maximization of hits to the defamation through SEO, Googlebots and Google Marketing tags, that the SRO refuses to cease and desist from.

## CONCLUSION

For the foregoing reasons, this Court should deny Respondent's Motion for a Stay and permit all discovery related activities (including the scheduling of disclosures and timing of discovery) to go forward. Respondent's Motion to Dismiss the Writ of Mandamus should be denied.

Respectfully submitted,

Susan Seltzer

Petitioner, Pro Se

Dated: January 17, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2022, Petitioner's Opposition to Respondent's Motion to Stay Discovery for Petitioner's Petition for Writ of Mandamus, was filed by Federal Express (Next Day) to the Clerk of Court of the United States District Court of the District of Columbia. I served a copy of the document on the following via Federal Express, as well as providing copies of the Opposition to Motion to Stay Discovery to trial court judge via Federal Express via the Clerk of Court.

/s/ _____          Date_____Jan 17, 2022_____
Susan Seltzer

Petitioner, Pro Se


**Juanita C. Hernandez**

**Thomas Karr**

**Securities and Exchange Commission**

100 F. Street, N.E.

Washington D.C. 20549-9612

Hernandezj@sec.gov

**Clerk of Court**

333 Constitution Avenue N.W.

Washington D.C, 20001

Room 1225 Telephone: 202 354-2000

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

SUSAN SELTZER, (Pro Se)

Petitioner.

v

GARY GENSLER, Chairman, Securities and Exchange Commission

Respondent.

Case: **1:21-cv-02093-JMC**



**Proposed Order – Denial of Respondent's Discovery Stay Motion**

On this day came on to be heard Petitioner's Response to Respondent's Motion to Stay Discovery and all discovery related activities (including the scheduling of disclosures and timing of discovery) pending the Court's resolution of Petitioner's Opposition to Respondent's Motion to Dismiss Petitioner's Petition for Writ of Mandamus, and the Court having reviewed said Opposition to Motion to Stay and supporting legal arguments and authority in support of denial of such Motion, finds that such Motion is not meritorious. Accordingly, it is

ORDERED that Respondent's Motion to stay Discovery shall be denied and it is hereby DENIED; and it is further

ORDERED that discovery and all discovery related activities (including the scheduling of disclosures and timing of discovery) in this case shall not be STAYED pending this Court's resolution of Respondent's Motion to Dismiss Petitioner's Petition for Writ of Mandamus.

Signed and entered on this _____ day of _____, 202_.

_____
HON. JIA M. COBB
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2022, a Proposed Order for Denial of Respondent's Motion to Stay Discovery for Petitioner's Petition for Writ of Mandamus, was filed by Federal Express to the Clerk of Court of the United States District Court of the District of Columbia. I served a copy of the document on the following via Federal Express, as well as providing copies of the Proposed Order to trial court judge via Federal Express via the Clerk of Court.

/s/ _____    Date _____
Susan Seltzer

Petitioner, Pro Se

**Juanita C. Hernandez**

D.C. Bar No. 449797

Securities and Exchange Commission

100 F. Street, N.E.

Washington D.C. 20549-9612

Hernandezj@sec.gov

**Thomas Karr**

D.C. Bar No. 426340

**Clerk of Court**

333 Constitution Avenue N.W.

Washington D.C, 20001

Room 1225   202 354-2000